IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



MAR 24 2009

DAWN STROUD,

    Plaintiff,

v.                                     Civil Action No. 3:08cv439

DONALD WINTER, et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Defendants' Motion to Dismiss (Docket No. 11). For the reasons set forth below, the Motion to Dismiss is granted.

**BACKGROUND**

The salient facts for the adjudication of this Motion to Dismiss, as taken from the Plaintiff's Complaint, are as follows. Dawn Stroud ("Stroud"), has been employed by the United States Department of the Navy for over 20 years. She currently serves as a Security Specialist at the Naval Surface Warfare Center, Dahlgren Division, in Dahlgren, Virginia. Donald Winter ("Winter"), who is sued in his official capacity, is the Secretary of the Navy, Department of Defense (the "Agency"), an Agency of the United States as defined by Section 701(b) of the Civil Rights Act of

1964 (hereinafter "Title VII"). At all relevant times, Mike Gillian ("Gillian"), who is sued in his individual capacity, was Stroud's immediate supervisor at Dahlgren. While at Dahlgren, Stroud possessed a Top Secret Security Clearance with access to "Sensitive Compartmental Information."

On April 20, 2007, Stroud filed an EEOC charge against Gillian and a coworker, Julia Bentley ("Bentley"), alleging gender discrimination, harassment, and retaliation. On May 4, 2007, Stroud allegedly reported to work and found a dead animal carcass on the floor of her office. On May 4, 2007, Stroud, through her legal counsel, contacted her Department Head and expressed her concern about the possible retaliation that she was experiencing as a result of filing the EEOC charge. On May 10, 2007, Gillian was interviewed concerning the allegations in Stroud's EEOC Complaint. On May 31, 2007, Stroud was given a polygraph examination, and she was later informed by the examiners that her answers to the examination questions had been "deceptive." On June 4, 2007, Stroud filed a formal EEOC charge against Gillian and Bentley.

Also on June 4, 2007, Stroud met with Navy investigators who were investigating Stroud's allegation respecting the dead animal carcass. Stroud initially

2

informed the investigators that she did not wish to speak with them. The investigators, however, informed Stroud that she would face disciplinary action unless she answered their questions. The investigators also accused Stroud of having planted the dead animal carcass in her own office in order to bolster the claims in her initial EEOC Complaint.

On July 11, 2007, Gillian proposed the suspension of Stroud's security access. On July 12, 2007, citing Stroud's recent behavior as a concern, Lieutenant Commander Lawrence Schadegg informed Stroud that her access to classified information was going to be removed. Notwithstanding Stroud's attempts to learn the substantive basis for this decision, including the submission of a Freedom of Information Act request, no explanatory documentation was submitted to Stroud by the Agency.

On July 23, 2007, Stroud received notice of a proposed indefinite suspension from her job. On August 2, 2007, she again requested documentation on the suspension of her security clearance, but no information was provided to her by the Agency. On August 23, 2007, Stroud was placed on a non-duty, non-pay status (indefinite suspension) pending the final adjudication of her security clearance. This suspension was allegedly accomplished in contravention of

3

the established policies of the Agency, which are expressed in various federal regulations.

On September 14, 2007, after being provided with notice of her right to file an appeal of her indefinite suspension, Stroud filed a mixed-case Complaint with the Merit Systems Protection Board ("MSPB"), alleging claims for both discrimination and retaliation for engaging in protected activity. On November 9, 2007, a prehearing conference was held in the MSPB appeal. Following the prehearing conference, an "Order and Summary of Prehearing Conference" was entered by the Administrative Judge. In this Order, the Administrative Judge noted her limited jurisdiction in the case because of the sensitive national security issues involved, and she also denied Stroud's motion for discovery. On November 16, 2007, Stroud, through her counsel, requested that her MSPB appeal be withdrawn. On November 21, 2007, the MSPB appeal was dismissed as withdrawn by the Administrative Judge.

Subsequently, Stroud, through her counsel, and in accordance with 29 C.F.R. § 1614.302, requested an interview with an EEO counselor because the MSPB had dismissed her appeal. On December 4, 2007, the Agency notified Stroud of her right to communicate with an EEO counselor within 45 days of the notice, and also advised

4

Stroud of her right to file an additional EEO Complaint, subject to 29 C.F.R. § 1614.107. On December 14, 2007, Stroud spoke with an EEO counselor. On January 28, 2008, Stroud filed a formal Complaint with the Agency's EEO office. On March 29, 2008, the EEO officer dismissed Stroud's EEO Complaint for various reasons. On April 18, 2008, the EEO officer rescinded her prior Notice of Dismissal, and then provided alternative reasons for the dismissal of Stroud's Complaint.

On July 11, 2008, Stroud filed a Complaint in this Court. In Count One, Stroud asserts a violation of Title VII, 42 U.S.C. § 2000e-5(f)(3) on account of alleged retaliation for engaging in protected activities. In Counts Two and Three, Stroud asserts a violation of her right to due process and the right against self-incrimination. Stroud seeks damages and any other available relief.

On January 21, 2009, the Defendants filed a Motion to Dismiss, asserting both a lack of subject matter jurisdiction and the failure of the Complaint to state a claim upon which relief could be granted. This motion has been fully briefed and is now ripe for decision.

5

## DISCUSSION

### I. The Applicable Legal Standard[1]

Motions to dismiss for lack of subject matter jurisdiction are decided under Fed. R. Civ. P. 12(b)(1). In considering such a motion, "[t]he plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." Biktasheva v. Red Square Sports, Inc., 366 F. Supp. 2d 289, 294 (D. Md. 2005). "When a defendant challenges subject matter jurisdiction by way of a motion to dismiss filed under Rule 12(b)(1), the district court may regard the pleadings as evidence on the issue and also may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). Accordingly, this Court will consider such documents insofar as they are relevant to the disposition of the Defendants' Motion to Dismiss. Nevertheless, "[t]he court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Biktasheva, 366 F. Supp. 2d at 294. These

---

[1] The Defendants state that they are moving to dismiss Stroud's claim under Fed. R. Civ. P. 12(b)(6). Defs' Mot. at 5. However, given that the Defendants' Motion to Dismiss primarily focuses on this Court's lack of subject matter jurisdiction, the proper standard for assessing the Defendants' Motion is Fed. R. Civ. P. 12(b)(1).

precepts and standards govern the resolution of the Defendants' motion.

## II. Failure To Exhaust Administrative Remedies

Title VII requires federal employees to exhaust their administrative remedies prior to bringing an employment action in federal court. See, e.g., Pueschel v. United States, 369 F.3d 345, 353 (4th Cir. 2004). Where a plaintiff alleges that she has been subjected to an adverse employment action, and that such action was based on discrimination, she may file a "mixed case" appeal to the MSPB, or an administrative complaint of discrimination with the EEOC, and must do *either one or the other* before filing a civil action in federal court. See, e.g., Butler v. Kempthorne, 532 F.3d 1108, 1110 (10th Cir. 2008) (in "mixed cases" a federal employee may file an appeal with the MSPB or an administrative complaint with the agency EEO, but "he must exhaust his administrative remedies by doing one or the other before filing suit").

Moreover, "[a]n aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the MSPB . . . but not both." Leak v. Runyon, 1996 U.S. App. LEXIS 16706, at *8 (4th Cir. July 11, 1996) (unpublished). If an aggrieved person does file both a mixed case complaint with the EEO and a mixed case

7

appeal on the same matter with the MSPB, then "whichever [was] filed first shall be considered an election to proceed in that forum." 29 C.F.R. § 1614.302(b).

Importantly, "once a government employee elects to pursue a mixed case before the [MSPB], she is obliged to follow that route through to completion, to the exclusion of any other remedy that originally might have been available." Stoll v. Principi, 449 F.3d 263, 266-67 (1st Cir. 2006). Consequently, "[i]t is well established that a complainant who withdraws an appeal before the MSPB fails to exhaust administrative remedies and is barred from filing a civil action in federal court." Khoury v. Meserve, 268 F. Supp. 2d 600, 610-11 (D. Md. 2003); see, e.g., Vinieratos v. U.S. Dep't of Air Force, 939 F.2d 762, 770-71 (9th Cir. 1991); Valentine-Johnson v. Roche, 238 F. Supp.2d 911 (E.D. Mich. 2003) ("[P]laintiff prematurely withdrew her appeal to the MSPB. Plaintiff's termination-related claims are barred by her failure to exhaust administrative remedies with the MSPB."); Howland v. United States Postal Serv., 209 F. Supp.2d 586, 590 (D. Md. 2002) ("By withdrawing his MSPB appeal, Plaintiff has failed to exhaust his administrative remedy."). Hence, "a complainant who withdraws certain claims in an appeal to the MSPB before a final decision on the merits fails to

8

exhaust administrative remedies with respect to those particular claims." Khoury, 268 F. Supp. 2d at 609.

### A. "Notice" And The Plaintiff's Election Of Rights

Stroud admits that she withdrew her MSPB appeal. Nevertheless, Stroud claims that she is not bound by the foregoing "administrative exhaustion" analysis for the following reason:

> An employee must be informed that he may not file both a complaint and an MSPB appeal, and that whichever is filed first, shall be considered an election to proceed in that forum. If an agency fails to inform, the appellant could not be deemed to have made a valid and informed election to proceed. *Ms. Stroud did not make an election of her rights. The Agency informed her [that] the only place she could go was the MSPB.*

Pltf's Opp. at 5 (emphasis added).[2] More to the point, Stroud contends that she "was informed that she could only proceed before the MSPB," and received no notice of her right to file a complaint with the Agency. Id. As such, Stroud contends that "because the Navy failed to properly advise Plaintiff of her rights, she did not fail to exhaust her administrative remedies." Id. at 3.

Both parties concede that, by regulation, an agency must "inform every employee who is the subject of an action

---

[2] To the extent that Stroud is contending that she was not informed of *the consequences* of withdrawing her appeal before the MSPB, the text of the regulation does not appear to support such an argument. In light of the following analysis, however, the Court need not address this issue.

9

that is appealable to the Board, and who has either *orally or in writing raised the issue of discrimination* during the processing of the action, *of the right to file either a mixed-case complaint with the agency or a mixed-case appeal with the Board.*" 29 C.F.R. § 1614.302(b) (emphases added). Pursuant to the plain text of this regulation, it is clear that prospective plaintiffs must be given notice of their litigation options in order for there to have been a valid "election" of options under the regulation. See McCoy v. United States Postal Serv., 2008 M.S.P.B. 37, 166 (2008) ("[T]he agency's decision letter did not, in any event, provide [appellant] with notice of a choice between filing a mixed-case complaint and a mixed-case appeal. Under these circumstances, we find that the election requirement set forth at 29 C.F.R. § 1614.302(b) does not apply because the factual circumstances giving rise to the appellant's discrimination claim had not occurred when he filed his first Board appeal, and the appellant was not, therefore, informed that filing a Board appeal would preclude him from subsequently filing a mixed-case complaint with the agency.").

The Defendants evidently do not deny that Stroud did not receive the type of notice required under 29 C.F.R. § 1614.302(b). See Def's Reply at 4-10. Nevertheless, the

Defendants claim that "[b]ecause the plaintiff [did] not raise *the issue of discrimination* during the processing of the action that [was] appealable to the MSPB, the notice of a right to file a mixed case complaint with the EEO was *not appropriate under the regulation*." Def's Reply at 5 (emphases added). In support of this contention, the Defendants point to the text of Stroud's August 7, 2007 reply to the Notice of Proposed Indefinite Suspension, where she failed to use the term "discrimination," and instead simply accused the Agency of "retaliation." See id.

In her letter, it is clear that Stroud did claim that she had been singled out and treated unfairly by her supervisor, and that "there [was] no reasonable basis to suspend [her] indefinitely for national security concerns." 8/02/2007 Letter at 2. Moreover, the text of the regulation states that notice must be provided to a plaintiff if she "orally" raised the issue of discrimination with a representative of the Agency. See 29 C.F.R. § 1614.302(b). The record currently before this Court is undeveloped as to whether Stroud orally raised the issue of discrimination prior to filing her MSPB appeal. Consequently, at this juncture, there are material jurisdictional facts in dispute on this issue, and the

11

Court is unable to conclude that Stroud failed to satisfy the procedural requirements for the receipt of notice under 29 C.F.R. § 1614.302(b).

### B. The Impact Of The Asserted Lack Of Notice

The Defendants further contend that even if they failed to provide Stroud with the required notice, "the rule established by federal courts is that the plaintiff must show, at a minimum, that the failure to provide notice *caused* her to take the action that resulted in her failure to exhaust administrative remedies." Def's Reply at 6 (emphasis added). With this in mind, the Defendants argue that Stroud has failed to demonstrate any causal nexus between the challenged lack of notice and the withdrawal of her appeal. Id. On this point, the Defendants' argument is well-taken.

In Leak v. Runyon, the Fourth Circuit stated the following reason for affirming the district court's dismissal of a plaintiff's Complaint:

> We agree with the district court that Leak cannot avoid the mandatory dismissal of his EEO complaint [filed after his MSPB appeal was withdrawn] because the Postal Service failed to notify him of his appeal rights as provided in 29 C.F.R. § 1614.302(b). Fatal to Leak's claim is his complete failure to offer evidence even remotely suggesting a *causal connection between the Postal Service's failure to give him notice of his appeal rights and his actions in abandoning his MSPB appeal and*

12

> *filing his EEO complaint after he had already filed his MSPB appeal.*

1996 U.S. App. LEXIS at *11-12 (emphasis added). This holding has been echoed by other circuit courts. See, e.g., Economou v. Caldera, 286 F.3d 144, 146 n.3 (2nd Cir. 2002); Miller v. Potter, 198 Fed. Appx. 794, 796 (11th Cir. 2006). In these cases, the courts generally assumed that the notice at issue was defective. Nevertheless, these courts affirmed the dismissals for failure to exhaust administrative remedies because the challenged notice *did not cause* the plaintiffs to abandon their administrative remedies.

In this case, it is similarly evident that the defective notice did not *cause* Stroud to abandon her MSPB appeal. Principally, even if Stroud could argue that she was unaware of the preclusive effect of filing her appeal with the MSPB, she plainly was aware of any such effect at the time that she *withdrew* her appeal. See Def's Opp. at Exhibit 3 (letter withdrawing the MSPB appeal and citing 29 C.F.R. § 1614.302(b)). Through the citation of 29 C.F.R. § 1614.302(b), it is clear that Stroud was fully aware that by withdrawing her MSPB appeal she would not be able to refile her Complaint with the Agency's EEO office. Consequently, Stroud's asserted lack of notice played no

role in the withdrawal of her MSPB appeal. Therefore, it is clear that Stroud failed to exhaust her administrative remedies by knowingly withdrawing her appeal, and thus her retaliation claim under Title VII necessarily fails.

### C. "New" Issues Of Retaliation

In further response, Stroud attempts to escape her failure to exhaust the applicable administrative remedies by asserting that her underlying EEO Complaint in this action raises issues of retaliation that she "did not know about . . . when she filed her MSPB appeal on September 14, 2007." Def's Opp. at 10.

Stroud, however, does not allege that she was ignorant about any such "issues" before she *withdrew* her MSPB appeal. See id. More importantly, the new "issues" identified by Stroud do not actually constitute new "claims" of retaliation. The subject of the MSPB appeal, and the scope of the claim contained therein, was accurately described by the Administrative Judge in the "Order and Summary of Prehearing Conference," dated November 9, 2007:

> The appellant has filed an appeal *of her indefinite suspension* pending adjudication of her security clearance by the Department of the Navy Central Adjudication Facility (DONCAF). She argues that her security clearance was suspended for discriminatory and *retaliatory* reasons and that the *procedures the agency security office followed in*

14

> *suspending her clearance were improper and inadequate as well as discriminatory.*

See Def's Reply at 11 (emphasis added).

Hence, "the Plaintiff [has] attempt[ed] to parse her claims in an effort to survive a motion to dismiss." Id. In reality, Stroud's substantive claim in this civil action (*i.e.*, that the procedures leading to her indefinite suspension were retaliatory and defective), is identical to the claim that she presented to the MSPB. Thus, Stroud's failure to exhaust her administrative remedies categorically bars all of the "issues" that are raised in this action.

Therefore, Stroud's claims under Title VII against both of the Defendants must be dismissed.

### III. Winter's Asserted Defense Of Sovereign Immunity

It is well settled that the United States, as a sovereign entity, is absolutely immune from suit except as Congress specifically provides, and that any such waivers of sovereign immunity are to be strictly construed. United States v. Testan, 424 U.S. 392, 399 (1976). Unless Congress has consented to the bringing of a particular kind of action against the United States, there is no jurisdiction in any court to entertain such actions. Id. Moreover, a claim for damages against a federal agency, or

against the head of an agency in his/her official capacity, "is barred by sovereign immunity unless Congress has expressly or impliedly consented to suit." Radin v. United States, 699 F.2d 681, 684-85 (4th Cir. 1983).

In this case, Stroud has stated a claim against Winter in his "official capacity of Secretary of the Navy," asserting two constitutional claims and seeking damages. Compl. at ¶¶ 104, 116. However, "[b]ecause the United States has not waived sovereign immunity in suits claiming constitutional torts," Stroud's constitutional claims against Winter must fail.[3]

IV. **Stroud's Bivens Claim Against Gillian**[4]

The Defendants also argue that "[t]he remedies provided to the Plaintiff under . . . Title VII . . . are exclusive and deprive the Court of jurisdiction over any Bivens claim attempted to be asserted by Stroud against

---

[3] Title VII waives sovereign immunity for "personnel actions affecting employees or applicants for employment . . . in military departments." 42 U.S.C. § 2000e-16(a). Therefore, Stroud's claims under Title VII are not precluded by sovereign immunity. For the reasons previously stated, Stroud's claims under Title VII will still be dismissed.

[4] Bivens actions allow for recovery of money damages against federal officials, such as Gillian, if they violate the United States Constitution in their individual capacities. Reinbold v. Evers, 187 F.3d 348, 355 (4th Cir. 1999). Bivens does not, however, allow for lawsuits against the government itself. Id. Therefore, Stroud has correctly recognized that a Bivens claim against Winters, who is named in his official capacity as Secretary of the Navy, is not cognizable. See Radin, 699 F.2d at 684-85 (Bivens, "which held that sovereign immunity does not shield federal officers in their individual capacity from liability for violation of an individual's constitutional rights, did not waive the sovereign immunity of the United States.").

16

Michael Gillian in his individual capacity." Def's Mot. at 15.

It is well established that Title VII is the exclusive remedy for claims that arise from a "federal employment relationship." Hall v. Clinton, 235 F.3d 202, 205-06 (4th Cir. 2000); accord Pueschel v. United States, 369 F.3d 345, 348 (4th Cir. 2004) (finding that Title VII establishes the "exclusive and preemptive" scheme under which federal employees can seek redress for employment discrimination); Mangum v. Postmaster Gen. United States Postal Serv., 2003 U.S. Dist. LEXIS 20873, at *5 (M.D.N.C. Nov. 14, 2003) (dismissing the plaintiff's non-Title VII claims due to Title VII's preclusive nature). Hence, where a constitutional claim "arise[s] out of [a plaintiff's] federal employment," it is statutorily "precluded" by Title VII. Hall, 235 F.3d at 205. Accordingly, if Stroud's claim arises out of her "federal employment relationship" with the Defendants, then she "may not also proceed on a Fifth Amendment claim against [Gillian] based on the same, allegedly discriminatory conduct." Middlebrooks v. Leavitt, 525 F.3d 341, 349 (4th Cir. 2008).

While acknowledging the generally preclusive nature of Title VII for federal employment actions, Stroud contends that the conclusions of Hall, Middlebrooks, and Pueschel

17

are "not controlling here, as [her] constitutional claims do not arise out of circumstances related to her 'employment relationship,' such as a termination of employment or other disciplinary or personnel action." Pltf's Opp. at 16. Rather, Stroud contends that "Gillian's actions were not grounded in personnel decisions, and his constitutional misconduct was distinct from any reasonable actions taken in the course of employment or within his duties as Stroud's supervisor."[5] Id. Accordingly, Stroud argues that her claim is not precluded by Title VII. Id. This argument is unpersuasive.

Fundamentally, Stroud's entire Complaint is predicated upon her status as an employee of the Agency. See Compl. at ¶ 2. Moreover, Stroud's Complaint explicitly asserts a claim for retaliation under Title VII, which represents the "exclusive, preemptive administrative and judicial scheme for the redress of *federal employment discrimination*." Brown v. General Services Admin., 425 U.S. 820, 829 (1976) (emphasis added). Finally, it is clear that *but for* Gillian's status as Stroud's employment supervisor, he

---

[5] Plaintiff's further attempt to characterize her allegations against Gillian as a "highly personal" injury, on par with the rape and sexual assault at issue in Brock v. United States, 64 F.3d 1421, 1423 (9th Cir. 1995), is remarkably misguided. Indeed, in Brock, the court noted that "[a]llegations of . . . *retaliation for a discrimination complaint* . . . do not state more than an employment discrimination claim and are therefore not separately actionable." Id. at 1424 (emphasis added).

could not have issued any of the "orders" that are challenged by Stroud in her Complaint. See Def's Reply at 19. Hence, the record shows that Stroud's claims "arise out of her federal employment" and are thereby precluded by Title VII. See Hall, 235 F.3d at 205. Therefore, Stroud's remaining Bivens claim must also be dismissed.[6]

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket No. 11) is granted.

It is so ORDERED.

_____/s/_____ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 24, 2009

---

[6] Undergirding all of Stroud's claims is her contention that "she was retaliated against when the individuals she filed an EEOC charge against failed to properly document or follow Department of Defense regulations" when deciding "whether to withdraw [her] access to her security clearance." Compl. at ¶ 102. As such, the Defendants argue that, independent of the foregoing analysis, Stroud's Complaint "must be dismissed . . . [because] an agency's decisions with respect to initiating, investigating, and deciding issues respecting an employee's security clearance are committed to the discretion of the executive branch, and are not reviewable by the courts." Def's Mot. at 11. Based on the precedent cited by the parties, although this Court could entertain a *properly plead* allegation that the Agency "violated its own procedural regulations when invoking or denying a security clearance," Duane v. Dept. of Defense, 275 F.3d 988, 993 (10th Cir. 2002), it does not appear that this Court would have jurisdiction to entertain any of Stroud's substantive arguments concerning the revocation of her security clearance. See, e.g., Reinbold v. Evers, 187 F.3d 348, 358 (4th Cir. 1999). Nevertheless, because the action should be dismissed for the reasons set forth above, this argument need not be resolved by the Court.

19